16462193066  From: Andrew Saulitis

2012-01-12 15:55:08 (GMT)

Loretta A. Preska    Page 1 of 2

LAW OFFICES OF

# ANDREW P. SAULITIS P.C.

555 MADISON AVENUE

NEW YORK, NEW YORK 10022

(212) 459-0900

Fax (212) 459-1826

January 11, 2012

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____         │
│ DATE FILED: 3/7/12              │
└─────────────────────────────────┘
```

**BY FAX**
**212 805-7941**

Hon. Loretta A. Preska
Chief United States District Judge
Daniel Patrick Moynihan
United States Court House
500 Pearl Street-Room 1320
New York, New York 10007-1312

*Spotnana, Inc. v. American Talent Agency, Inc.*
**1:09-cv-03698-LAP-GWG**

Dear Judge Preska:

We represent the plaintiff-judgment creditor, Spotnana, Inc. ("Spotnana").

We write concerning Spotnana's pending post-judgment motion for appointment of a receiver pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05, sought for judgment debtor American Talent Agency, Inc. ("ATA"), against which judgment was entered March 28, 2011 on account of failure to comply with the in-court settlement agreement dated November 1, 2010. The judgment remains unsatisfied.

After judgment was entered (for $366,136.10) but unsatisfied, we wrote a "pre-motion" letter dated April 6, 2011 for appointment of a receiver, pursuant to Item 2 (A) of your Individual Practices, to which the attorney for the judgment debtors, Jon D. Jekielek, Esq. of Jekielek & Janis LLP, responded by letter dated April 8, 2011, to which we replied by letter dated April 15, 2011.

At a conference with the Court held April 11, 2011 the parties confirmed to the Court that the parties' respective "pre-motion" letters plus the additional authorities submitted via our April 15, 2011 letter would be treated as the motion papers for the proposed motions, as confirmed by the parties' jointly-signed letter dated April 11, 2011. (On their part, the judgment debtors sought to move pursuant to Fed. R. Civ. P. 60 (b) (3) to vacate the judgment.) The motions thus have been fully briefed.

Since then the motions have been held in abeyance, informally, while the parties

Hon. Loretta A. Preska
January 11, 2012
Page 2

attempted to resolve the overall debt among themselves, with the judgment remaining in place. Those efforts have failed and we must ask the Court to address the motion for receivership of ATA.

Not only has no significant progress been made on a business level, as hoped, but ATA has incurred additional debt of $32,508.50 to Spotnana, on account of bounced checks for travel services, services that Spotnana paid for and delivered to ATA. Meantime ATA has been booking revenue-generating business around the world, but apparently is diverting revenues elsewhere, and horsing Spotnana around with empty promises, excuses and bounced checks.

Spotnana has exhausted alternative remedies, and satisfaction of the judgment simply has not been a priority for ATA on a business level. A receivership is the only viable means left to increase the likelihood of satisfaction. *See, e.g., Harbor Footwear Group, Ltd. v. ASA Trading, Inc.*, 1 Misc. 3d 911A, 781 N.Y.S.2d 624, 2004 N.Y. Misc. LEXIS 57; 2004 NY Slip Op 50036U, *2-3 (Sup. Ct. Nassau County Jan. 20, 2004). A receiver would be able to marshal ATA's contracts, revenues, accounts receivable, examine fraudulent transfers and expenditures so that funds are not diverted and instead see that they are committed to satisfaction of the judgment. Simple execution is ineffective as ATA's bank accounts have been generally overdrawn, while funds apparently flow elsewhere. Most of ATA's receivables emanate from overseas, so garnishment is not available. We also note that Spotnana has priority liens on all of ATA's assets, which are being disregarded in favor of unsecured creditors and insiders.

Thus we ask that the Court now address the pending motions and grant Spotnana's for receivership pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05. This is without prejudice to any other rights and remedies Spotnana may have with respect to the judgment and otherwise.

Respectfully yours,

Andrew P.
Saulitis

Andrew P. Saulitis

APS/wp

c:    Jon D. Jekielek, Esq.
      Jekielek & Janis LLP
      fax 212-542-8883

*Based on the parties' letters (attached), counsel shall appear for a conference on March 26, 2012 at 9:00 a.m. Counsel shall be prepared (by conferring with each other in advance) to update the Court on the status of the debt, the necessity for a receiver and to propose candidates for receiver. So ordered.*

*March 7, 2012*

*Loretta A. Preska
U.S.D.J.*

# JEKIELEK & JANIS LLP

## ATTORNEYS AND COUNSELORS AT LAW
www.jj-lawyers.com

| **New York City Office** | **Philadelphia Area Office** |
|---|---|
| 295 Madison Avenue, 22ⁿᵈ Floor, New York, NY 10017 | 406 E. Pennsylvania Boulevard, Feasterville, PA 19053 |
| Phone: 212-686-7008 • Fax: 212-542-8883 | Phone: 215-396-2727 • Fax: 267-386-2167 |

Jon D. Jekielek (jon@jj-lawyers.com)
*Admitted in New York*

VIA FACSIMILE

January 18, 2012

The Hon. Loretta A. Preska
United States Magistrate Judge
United States Court House
500 Pearl Street – Room 1320
New York, New York 10007

> Re:   Spotnana v. American Talent Agency, et al: 09 Civ. 3698 (LAP)(GWG)

Dear Judge Preska:

I represent defendant American Talent Agency, Inc. ("ATA" or "Defendant") and Yugeshwar Rajkumar ("Rajkumar") in the above-referenced action and write pursuant to Your Honor's individual rules and practices and in response to the letter written by Spotnana, Inc. ("Spotnana" or "Plaintiff") on January 11, 2012 which requests Your Honor to rule on the motions previously submitted to the Court in April of 2011 in connection with the various issues surrounding the enforceability-validity of the judgment obtained by Plaintiff as against ATA and Rajkumar, which at the time was $366,136.10 (a number ATA and Rajkumar has disputed in its April 2011 correspondence) and the request by Spotnana for a receiver to be appointed in connection with ATA's business and to satisfy the judgment.

After a careful review of Plaintiff's January letter, I do not dispute with the recitation of the facts as they relate to the correspondence previously submitted to the Court and that the motion before the Court is fully briefed. However, ATA and Rajkumar take exception to Plaintiffs'' summary and account of the progress made by ATA and Rajkumar in its efforts and actual progress in satisfying the judgment.

Since the party's had a conference call with Your Honor in April of 2011, the judgment debtors have made significant strides in meeting their obligations to the Plaintiff. It should be noted that ATA and Rajkumar have made ALL cash payments to Plaintiff as provided for under the settlement agreement, a total of $130,000.00.

In addition to cash payment portion of the settlement, ATA was to present to Spotnana $295,000 in business, which would be calculated at 10% of the gross amount of actual travel booked or the amount of bona-fide offers to book travel submitted to Spotnana by ATA. Therefore the total amount of travel to be presented to Spotnana by ATA was just under $2,950,000.00. ATA was to submit this amount in bona-fide offers to Spotnana on a quarterly basis at $300,000.00 per quarter. Any amount of travel submitted to Spotnana over $300,000

JEKIELEK & JANIS LLP

January 18, 2012

would carry over to the next quarter and be credited towards the next $300,000.00 in travel that ATA was required to submit to Spotnana.

Based upon numbers provided to ATA and Rajkumar on January 9, 2012 via electronic mail, it is Plaintiff's position that Plaintiff received $644,649.12 in revenues by ATA, in turn, based on those numbers ATA would be $555,535.08 short of the business quota. (Enclosed is a copy of Plaintiff's email of January 9, 2012).It is in good faith that ATA disputes Plaintiff's calculation of the total business. ATA staff is in the process of verifying the flights and bona-fide offers booked and/or submitted to Spotnana subsequent to entering the settlement agreement and should have the numbers by weeks end.

Request is respectfully made to allow ATA to submit their findings to the Court on or before January 20, 2012. After ATA is able to determine in detail the amount of business done with Plaintiff and the amount in bona-fide business submitted to Spotnana during the 2011 Calendar year, it very well may be that ATA has fallen short of the 1.2 Million Dollars in gross business required by the Agreement, but even based on Mr. Saulitis' numbers, the fact is that ATA has made great strides in a depressed economy to present no less than over $600,000 in business to Spotnana.

Plaintiff' bald assertion that "no significant process has been made on a business level" just does not hold water. ATA and its employees have gone to great lengths to meet their obligations and to pay the debt owed to Spotnana has been greatly reduced by any account and the facts and law surrounding this dispute does not warrant a receivership. The appointment of a receiver is not going to increase the amount of concerts that ATA books, nor will it increase the amount of air travel that ATA needs to purchase for those concerts. Also, in the same vein, the Plaintiff has stated through its counsel that it has exhausted alternative remedies." What remedies have in connection with the enforcement of the judgment has Spotnana exhausted? ATA and Rajkumar categorically deny that Spotnana has sought any remedies to enforce and/or collect upon the judgment other than request a receiver be appointed.

In addition to the principal amount owed on the judgment, which has been drastically reduced since April 2011, the last time the parties spoke with the Court, Plaintiff has alleged an additional $32,508.50 is owed or services paid and delivered to ATA. ATA also disputes the validity and accuracy of this allegation. For starters, included in this amount and detailed in the January 9, 2012 email from Plaintiff's counsel is the amount of $11,508.50 owed in connection with travel services provided to third party Dwayne Cross. However, in an email dated October 1, 2011, from Mr. Cross to Spotnana's president, Sarosh Waghmar, Mr. Cross authorized Spotnana to charge his credit card for $11,508.50, which was in fact charged for that amount. I have enclosed correspondence from Mr. Waghmar confirming that the aforementioned payment was made in full.

With respect to the remaining balance of $21,000.00, ATA believes that can be resolved rather simply. In September of 2011 ATA caused to be paid to Spotnana $38,000 for travel in

connection with a concert featuring the performing artist "The Game" in Dubai. For reasons unrelated to this matter the concert was canceled and the tickets purchased by Spotnana and paid

# JEKIELEK & JANIS LLP

January 18, 2012

for by ATA were not used. No less than $18,000 of the $28,000 in the airfare purchased were allocated towards refundable business class seats through Emirates airlines. ATA believes that Spotnana has already received this refund, and if they have not received this amount from Emirates, ATA will immediately authorize Spotnana to collect the refund and apply the $178000 (less any reasonably cancellation fee towards any money owed to Spotnana. As far as the balance of approximately $5,000.00, well ATA offered to pay Spotnana $7,000.00 as recently as this past Friday in an effort to take care of the alleged outstanding balance.

Another example of a way in which any amount owed by ATA could be offset by an amount to be determined as a result of the actions taken by Spotnana in connection with the frequent flyer mile account maintained by ATA at British Airways. Investigation and research have shown that Spotnana or one of its employees used Rajkumar' frequent flyer miles at British Airways or a flight from London, England to San Francisco, CA. As a direct and proximate result of this act, Mr. Rajkumar's frequent flier miles account was suspended and investigated. There is a value t this flight and an additional value to any and all frequent flyer points lost by Rajkumar as a result of the actions taken by Spotnana. Spotnana has been unwilling to discuss the value of the above, and ATA seeks to have one determined and to offset any amount owed on the judgment.

The reason these facts are relevant is that they directly contradict the Plaintiff's position that they have exhausted all alternative remedies other than a receivership. That is simply not the case, as even a little effort to creatively come up with a solution would have yielded positive results and payment to Spotnana. Clearly there are many alternatives to that of a receivership.

Finally, ATA and Rajkumar submit to the Court that the biggest impediment in getting the judgment completely paid off though future business is Spotnana itself. On numerous occasions Spotnana has failed to deliver the service required by ATA's clients to make ATA's clients comfortable using Spotnana. Their poor response time, customer service and numerous mistakes with respect to booking flights all put ATA in a tenuous position by requiring their clients to use Spotnana if they produce the lowest price. Just recently one of ATA's clients went to check in for a flight and although it was confirmed by Spotnana, no ticket had actually been purchased and ATA's client had to pay for ticket on the spot with his own money for a fee of $1,500.00. This is just one example as to how the structure of the settlement agreement is negatively impacting ATA's business. Of greater importance is newly discovered information that Spotnana is no longer an approved British Airways agent and are suspended from using their services. Upon information and belief it was acts similar to those detailed above committed by Spotnana, such as misappropriate frequent flyer miles, which resulted in its suspension. The impact is of great consequence as British Airways is the main overseas carrier that ATA uses for its commercial flights on behalf of its clients. It also has the majority of direct overseas flights. The inability to use British Airways results in higher costs and more non-direct flights. First class and cost effective service is very important in the live music industry and Spotnana is no longer able to provide such service.

In light of the foregoing reasons, it is respectfully submitted that receiver should not be appointed in connection with the payment of the settlement amount by ATA and Rajkumar to

# JEKIELEK & JANIS LLP

January 18, 2012

Spotnana and that the Court should relieve ATA from its obligation to do business with Spotnana to satisfy the judgment, but in turn, allow the parties to enter into a revised settlement agreement which accurately reflects all business provided by ATA to Spotnana during the term and accounts for all rights to off-set the debt as detailed herein and otherwise. In turn I respectfully request a teleconference with the Court to discuss the matters set forth herein.

Respectfully submitted,

Jon D. Jekielek

Encl.
C:       Andrew P. Saulitis, Esq.

LAW OFFICES OF
ANDREW P. SAULITIS P.C.
555 MADISON AVENUE
NEW YORK, NEW YORK 10022

(212) 459-0900
Fax (212) 459-1826

January 19, 2012

**BY FAX**
**212 805-7941**

Hon. Loretta A. Preska
Chief United States District Judge
Daniel Patrick Moynihan
United States Court House
500 Pearl Street-Room 1320
New York, New York 10007-1312

### *Spotnana, Inc. v. American Talent Agency, Inc.*
**1:09-cv-03698-LAP-GWG**

Dear Judge Preska:

We represent the plaintiff-judgment creditor, Spotnana, Inc. ("Spotnana").

This replies to the letter of January 18, 2012 by Jon D. Jekielek, Esq. of Jekielek & Janis LLP, successor attorneys for judgment debtors American Talent Agency, Inc. and its principal Yugeshwar Rajkumar ("ATA"), responding to our letter of January 11, 2012 concerning Spotnana's pending post-judgment motion for appointment of a receiver pursuant to Fed. R. Civ. P. 69 (a) and N.Y. Civ. Prac. L. & R. §§ 5228 (a) and 6402-05.

It is not disputed that ATA defaulted under the in-court settlement agreement dated November 1, 2010 and thus judgment was entered (on notice) for $366,136.10 on March 28, 2011, which remains unsatisfied. Some payments were made since then, but over $300,000 remains unsatisfied, with no payments forthcoming for over six months. Indeed ATA has incurred over $32,000 in additional indebtedness to Spotnana, as a "reward" for Spotnana attempting to resolve the debt on a business level. This is hardly "progress" or "significant strides in meeting [ATA's] obligations to Plaintiff" as Mr. Jekielek suggests. Spotnana is a small business while ATA bills itself as "urban music's largest, independent international booking firm" (http://americantalentagency.net/aboutata.php).

Mr. Jekielek's letter is an attempt to re-trade on the original settlement agreement, rather than address the outstanding judgment. It is also inappropriate to engage in debate over the parties' post-judgment negotiations. In the "without prejudice" email that Mr. Jekielek attaches (in violation of Fed. R. Evid. 408 (a)) we make it crystal clear that

Hon. Loretta A. Preska
January 19, 2012
Page 2

figures presented are *"pro forma"* and that "[t]he actual amount due is per judgment, and the above is for settlement/workout purposes and without prejudice to accelerated balance" and that "[t]he situation remains untenable," which has not changed. (In addition to matters due under the judgment, Spotnana reserves its rights to damages for breach of the "exclusivity" provisions under the settlement agreement.)

Spotnana has reviewed each of Mr. Jekielek's assertions.[1] Suffice that Mr. Jekielek is misinformed regarding the dealings to which he refers. If anything, this underscores why a receivership is appropriate, given that ATA has not oriented its business operations toward satisfaction of the judgment, but instead has oriented them to avoid this while keeping Spotnana "on a string."

Mr. Jekielek acknowledges that the motion has been fully briefed, which should now be addressed and granted pursuant to Fed. R. Civ. P. 69 (a) and N.Y. Civ. Prac. L. & R. §§ 5228 (a) and 6402-05. This is without prejudice to any other rights and remedies Spotnana may have with respect to the judgment and otherwise.

Respectfully yours,

Andrew P. Saulitis

Andrew P. Saulitis

APS/wp

c:      Jon D. Jekielek, Esq.
        Jekielek & Janis LLP
        fax  212-542-8883

---

[1]Spotnana can very specifically rebut each and every one of those assertions, and reserves the right to do so should the Court deems this necessary. For example, Mr. Jekielek purports to represent, without attribution, that "Spotnana is no longer an approved British Airways agent and are suspended from using their services." Spotnana can readily document that it has issued tickets for its customers worth over $150,000 on British Airways in the first half of January 2012 alone, and much more all during 2011. None of Mr. Jekielek's representations about Spotnana is accurate, but most importantly, they are nothing more than excuses, and irrelevant to ATA's unsatisfied obligations under the judgment.