USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-22-13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

SPOTNANA, INC.,                    :          09 Civ. 3698 (LAP)
                                   :
                    Plaintiff,     :          MEMORANDUM AND ORDER
                                   :
          -against-                :
                                   :
AMERICAN TALENT AGENCY, INC.,      :
                                   :
                    Defendant.     :
------------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

          Before the Court are three separate motions, two of
which the parties agreed to brief by way of letters.[1]  First,
Defendant American Talent Agency, Inc. ("ATA") and its
principal, Yugeshwar Rajkumar ("Rajkumar") (collectively, the
"Judgment Debtors"), move to vacate the judgment entered against
them jointly and severally in the amount of $366,136.10 in favor
of Spotnana, Inc. ("Plaintiff").  In the alternative, the
Judgment Debtors move to amend the judgment to reduce the amount
owed thereunder by almost half.  Finally, Plaintiff moves to
appoint a receiver to facilitate satisfying the judgment.  For
the reasons stated below, the Judgment Debtors' motion to vacate
is DENIED, the Judgment Debtors' motion to amend [Dkt. No. 67]

---

[1] Defendant's motion-letters are attached as Exhibit C to the
Affirmation of Jon D. Jekielek in Support of Motion to Amend,
dated May 23, 2012 [Dkt. No. 71] ("Jekielek Aff.").  The Court
is appending to this memorandum and order Plaintiff's motion-
letters.

is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion for receivership is GRANTED.

I.   BACKGROUND

Plaintiff brought this action against ATA alleging, inter alia, breach of contract claims for ATA's alleged failure to pay for airline tickets Plaintiff booked on ATA's behalf. ATA, in turn, asserted counterclaims for Plaintiff's alleged deficiencies in providing its travel services.  On November 1, 2010, with the assistance of the Court, the parties entered into a settlement agreement on the record (the "Settlement").

A.   Terms of the Settlement

The Settlement called for ATA to make two different forms of payment to Plaintiff.  First, ATA was required to make a wire payment of $130,000, payable in the following installments:  $45,000 by noon on November 10, 2010; $35,000 by noon on December 31, 2010; and $45,000 by noon on April 1, 2011.[2] Time was of the essence with respect to each payment.  (Jekielek Aff. Ex. A, at 2:8-13, 2:23-25, 3:1-2.)

Second, the remaining balance of $295,000 would be based on ATA's providing a guaranteed level of revenue booking for Plaintiff, to be calculated as ten percent of gross

---

[2] The parties declared that the total wire payments would equal $130,000, but the specific payment installments only add up to $125,000.

international air travel booked per quarter.  For example, if ATA booked $100,000 worth of international air travel through Plaintiff during the first quarter of 2011, the remaining settlement balance would be reduced by ten percent of that quarter's revenue, or $10,000.  (Id. at 3:3-6, 5:11-19, 6:2-3.) ATA would also receive credit per quarter for any competing travel offers it submitted to Plaintiff but which Plaintiff declined and which ATA thereafter booked with another travel service provider.  (Id. at 3:20-4:25.)

The Settlement called for ATA to guarantee at least $300,000 in international air travel business for Plaintiff each quarter, with any shortfall "guaranteed in cash."  (Id. at 3:9-11.)  The Judgment Debtors represented that they were "sufficiently solvent" and "capable of meeting the obligations under" the Settlement.  (Id. at 7:13-15.)  Indeed, counsel for the Judgment Debtors affirmed that they "wouldn't be entering it otherwise."  (Id. at 7:16.)

The Settlement further provided that the Judgment Debtors' obligations would be secured and guaranteed by a judgment, to be entered "jointly and severally against ATA and its principal[,] [Rajkumar]," which "would not be enforced or executed upon pending compliance with the [Settlement]."  (Id. at 6:4-21.)  "In the event of breach of the settlement agreement, balances due shall be accelerated[,] . . . with

3

credit given for any prior payments made under the agreement. And the judgment will be enforceable upon filing of an affidavit of noncompliance with the court on three business days' notice to counsel . . . ." (Id. at 6:22-7:2.) Additionally, the judgment would be "binding on successors," (id. at 7:7-12), and the Settlement integrated "the entire understanding of the parties" and could not be altered "other than by a writing signed by the party to be charged," (id. at 7:23-8:1).

      B.    ATA Breaches the Settlement

ATA had difficulty meeting the financial terms of the Settlement immediately after agreeing to them. Prior to the first payment of $45,000 being due on November 10, 2010, Rajkumar notified Plaintiff of ATA's inability to make the required payment on time, and ATA ended up making the payment in two equal installments by November 18, 2010. (Jekielek Aff. Ex. C, letter dated Apr. 4, 2011, at 2.) ATA was even more deficient in satisfying the second lump sum payment of $35,000, which was due by December 31, 2010. Instead, ATA paid Plaintiff $17,500 on January 26, 2011, $8,750 on February 24, 2011, and the remaining $8,750 on March 15, 2011. (Id.) As the Settlement made clear that time was of the essence in all cases, ATA's failure to make the first two required payments on time and in full constituted separate breaches of the Settlement.

C.    Procedural History

In light of ATA's unwillingness to comply with the terms of the Settlement, Plaintiff sought an entry of judgment as provided in the Settlement in the event of default. Plaintiff's application was unopposed, and the Court entered judgment against the Judgment Debtors on March 28, 2011.  [See Dkt. No. 61.]  After judgment was entered in Plaintiff's favor, the Judgment Debtors wrote the Court seeking to vacate the judgment.  At the same time, Plaintiff wrote the Court seeking the appointment of a receiver.  Those two motions were held in abeyance following the parties' agreement to attempt an amicable resolution of the outstanding debt.

Unfortunately, the parties did not succeed in resolving their dispute informally, and Plaintiff renewed its motion for receivership in January 2012.  [See Dkt. No. 63.] Following a conference with the Court on March 26, 2012, the parties attempted yet again to resolve the outstanding debt on their own.  Those negotiations, too, failed, and the Court scheduled a hearing for May 21, 2012, on the issue of how much remained owing on the judgment.  Because counsel for the Judgment Debtors was unprepared for that hearing—admittedly, inexcusably so—the Court granted the Judgment Debtors permission to respond by written motion to the arguments made by Plaintiff's counsel at the hearing.  The Judgment Debtors'

5

motion to amend the judgment followed.  The Court now resolves all outstanding motions.

II.  DISCUSSION

A.   Judgment Debtors' Motion to Vacate the Judgment

The Judgment Debtors initially make three arguments why the judgment should be vacated, none of which specifically refers to the available grounds for relief under Federal Rule of Civil Procedure 60(b).[3]  First, they argue ATA did not breach the Settlement because Plaintiff's principal, Sarosh Wagmar ("Wagmar"), agreed orally to modify the amounts of and deadlines for the cash payment installments.  This argument fails because the Settlement expressly provides that it may not be amended except by a writing signed by the party to be charged and Plaintiff accepted the modified cash payments while simultaneously preserving its rights under the Settlement.  That is consistent with New York law, see N.Y. Gen. Oblig. Law § 15-301(1); N.Y. U.C.C. § 1-207, which governs the Settlement, (Jekielek Aff. Ex. A, at 7:22-23).  Accordingly, any alleged

---

[3] The only references to Rule 60(b) in the Judgment Debtors' motion to vacate come in the introductory paragraphs of their supporting letters.  The Judgment Debtors reference Rule 60(b)(3), which deals with fraud, misrepresentation, or misconduct by an opposing party, and Rule 60(b)(6), which covers "any other reason that justifies relief."  Not only are the arguments for vacatur not tied back to these rules, the Judgment Debtors do not cite a single case or other authority in support of the relief sought (despite the opportunity to supplement their motion [see Dkt. No. 62]).

oral agreement to extend the payment terms of the Settlement does not justify vacating the judgment.

Next, the Judgment Debtors maintain that the notice of default they received was inadequate because it prematurely noticed default of the 2011 first quarter revenue guarantee. They additionally point to Wagmar's failure to include in his declaration in support of entering judgment the amount of business Plaintiff had received from ATA to that point in 2011. But notwithstanding these deficiencies the Judgment Debtors do not dispute that they were in default of the payment installment obligations under the Settlement.  Because the various breaches of those payment obligations constituted independent grounds for entering judgment, neither of the Judgment Debtors' arguments warrants vacating the judgment.

Finally, the Judgment Debtors argue the judgment is void because Rajkumar is not a captioned party in this action. However, the Settlement expressly provides that judgment may be entered against both ATA and Rajkumar in the event ATA fails to comply with the terms of the Settlement.  (Jekielek Aff. Ex. A, at 6:4-21.)  As Plaintiff notes, this provision is consistent with federal civil procedure.  See Fed. R. Civ. P. 71 ("When an order . . . may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party.").  Because Rajkumar had actual notice of his personal liability in the

7

event of ATA's default under the Settlement, as well as actual notice of Plaintiff's application for entry of judgment, and because Rule 71 authorizes the entry of judgment against a non-party, the judgment is not defective on its face.

The Court has considered and rejected any other arguments in favor of vacatur.  Accordingly, the Judgment Debtors' motion to vacate the judgment is DENIED.

B.   Judgment Debtors' Motion to Amend the Judgment

The Court treats the Judgment Debtors' motion to amend as a motion for relief from the judgment pursuant to Federal Rule of Civil Procedure 60(b).[4]  Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment" for a variety of reasons.  While any motion under Rule 60(b) "must be made within a reasonable time," any such motion brought on the grounds of mistake, newly discovered evidence, or misconduct by the opposing party must be made "no more than a year after the entry of the judgment."  Fed. R. Civ. P. 60(e).  Were the Judgment Debtors to rely on these grounds for relief, their motion would be untimely.  However, to the extent the Judgment Debtors bring their motion under Rule 60(b)(6) "for any other reason that

---

[4] As Plaintiff points out, to the extent the motion is made pursuant to Federal Rule of Civil Procedure 59(e), it is untimely.  See Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment.").

justifies relief," the motion is timely so long as the Court finds it to have been made within a reasonable time.[5]

"What is a 'reasonable time' is a question to be answered in light of all the circumstances of the case." United States v. Cirami, 563 F.2d 26, 32 (2d Cir. 1977).  Here, the Court is persuaded that the Judgment Debtors have brought their motion pursuant to Rule 60(b)(6) within a reasonable time. Although the Court entered judgment in March 2011, the parties spent the remainder of that year doing business in an attempt to work out the balance owed on the judgment.  The Judgment Debtors maintain it was the parties' mutual understanding that ten percent of the business ATA booked for Spotnana post-judgment would be applied to the judgment.  According to the Judgment Debtors, it was not until Plaintiff wrote the Court in 2012 to request a ruling on the suspended motions and subsequent failed negotiation talks following a teleconference with the Court on March 26, 2012, that they learned Plaintiff did not intend to credit the 2011 business against the judgment.  On May 21, 2012, a hearing was held on the outstanding balance owed on the

---

[5] As Plaintiff points out, (Pl. Opp. [Dkt. No. 76] at 2 n.1), the Judgment Debtors' motion for relief under Rule 60(b)(6) might better serve as a motion for relief under Rule 60(b)(5) on the ground that the "judgment has been [partially] satisfied."  But the analysis that follows would be the same had the Judgment Debtors brought their motion under Rule 60(b)(5) instead of Rule 60(b)(6).  Accordingly, the Court will not engage further in the academic inquiry of whether the motion is correctly styled.

judgment, and the Judgment Debtors filed their Rule 60(b) motion on May 23, 2012.  On these facts, and particularly given the long periods of negotiation that have occurred post-judgment, the Judgment Debtors' Rule 60(b) motion is timely.

Turning to the substance of the motion, the parties agree that since the entry of judgment ATA has paid Plaintiff the remaining balance of the lump sump payments due under the Settlement.  The major disagreement is whether, as the Judgment Debtors advocate, the judgment should be further reduced by ten percent of the amount of business ATA booked through Plaintiff in 2011, according to the revenue booking methodology in the Settlement, or whether, as Plaintiff argues, ATA is not entitled to such credit because the terms of the Settlement no longer govern post-judgment.

On the one hand, the Judgment Debtors' argument that Plaintiff would obtain a double recovery were credit not given for the business ATA has booked through Plaintiff since judgment was entered mischaracterizes the issue.[6]  The reality is that both Plaintiff and ATA have benefited from the revenue booking aspect of the Settlement:  Plaintiff receives money for arranging travel for ATA's clients, and ATA saves travel costs

---

[6] As for the Judgment Debtors' argument that Plaintiff would also receive a double recovery were credit not given for travel offers ATA presented to Spotnana but which were rejected and ultimately booked through a different travel service provider, the argument is a non sequitur.

by locking in low rates.  The parties' relationship may be acrimonious but it is nonetheless mutually profitable.

On the other hand, Plaintiff cannot have its cake and eat it, too.  At times Plaintiff has insisted the Settlement is no longer operable and it is the judgment instead that controls. Plaintiff takes this position to argue, inter alia, the revenue booking methodology in the Settlement has no effect post-judgment and therefore any business ATA booked for Plaintiff in 2011 failed to reduce the judgment.  (See May 21, 2012 Hearing Tr. [Dkt. No. 73] at 2-6.)  Other times, however, Plaintiff has claimed the Settlement is in fact still in force.  For example, after the parties agreed to hold the first two post-judgment motions in abeyance while they attempted to resolve their dispute informally, Plaintiff's counsel insisted:  "There is no 'new' settlement agreement.  The settlement agreement can't be changed or discharged absent writing to that effect.  Everyone needs to understand that, no matter what business decisions go on."  (Jekielek Aff. Ex. H, at 2; see also Opposing Declaration of Andrew P. Saulitis, dated May 29, 2012 [Dkt. No. 75] ¶ 13 ("'Also note that while judgment has been entered in accordance with the settlement agreement, the exclusivity portions of the settlement agreement otherwise remain in effect.'" (quoting email from Plaintiff's counsel to counsel for the Judgment Debtors)).)

While Plaintiff may be correct that the judgment supersedes the Settlement, the Court finds that Plaintiff is estopped from relying on this fact to defeat the Judgment Debtors' motion given Plaintiff's representations to the contrary. It is clear from the acrimonious relationship of the parties that they would not have conducted business together in 2011 were it not for ATA's understanding—despite the constant reminders from Plaintiff's counsel that all attempts to reach a business solution were without prejudice to Plaintiff's rights under the judgment—that the parties' continued business relationship was for the purpose of paying down the balance of the judgment. That Plaintiff held its motion for receivership in abeyance for nine months while it continued doing business with ATA only reinforces that impression. Given these extraordinary circumstances, see Rodriguez v. Mitchell, 252 F.3d 191, 201 (2d Cir. 2001), the Court finds it would be inequitable not to credit ATA for the business it provided Plaintiff in 2011.[7]

---

[7] Rajkumar claims that Wagmar repeatedly told him that all business booked through Plaintiff in 2011 would reduce the balance on the judgment per the terms of the Settlement. (E.g., Affidavit of Yugeshwar Rajkumar, dated May 23, 2012 [Dkt. No. 70] ("Rajkumar Aff.") ¶ 20.) Wagmar did not submit an affidavit in opposition. Accordingly, the Court treats this portion of Rajkumar's testimony as uncontroverted. Notwithstanding Plaintiff's counsel's repeated statements that all settlement discussions were without prejudice to Plaintiff's rights under (continued)

12

But Plaintiff is right that ATA cannot pick and choose which terms of the Settlement still apply after having disclaimed its own payment obligations thereunder.[8]  For example, ATA requests additional credit for travel offers it allegedly submitted to Plaintiff that were rejected.  However, not only did ATA forfeit this benefit of the Settlement when it breached its payment obligations, the Court finds that ATA has not proved it satisfied the requirements for receiving such credit even assuming the Settlement was still in force.

The parties stipulate that ATA has paid Plaintiff $58,750 since judgment was entered.  (Joint Pre-Hearing Order [Dkt. No. 66] § 4.5.)  In addition, Plaintiff concedes that it received $626,757.12 worth of business through ATA in 2011. (Id. § 4.7.)  Thus, the Court will grant in part the Judgment Debtors' motion and reduce the judgment by $58,750 for the final cash payments and $62,675.71 per the revenue booking methodology in the Settlement, for a total of $121,425.71.  Because the Court finds that the Judgment Debtors have not put forth any

_____

(continued)
the judgment, the Court finds reasonable Rajkumar's understanding that the business booked through Plaintiff in 2011 would be applied against the judgment and treats it as a "reason justifying relief" under Rule 60(b)(6).

[8] To be fair, neither can Plaintiff pick and choose after having sought and obtained the entry of judgment.

13

meritorious grounds for reducing the judgment further, their motion is denied in all other respects.

Accordingly, judgment is hereby entered against ATA and Rajkumar, jointly and severally, in the amount of $244,710.39.

C.    Plaintiff's Motion to Appoint a Receiver

Finally, Plaintiff seeks to have a receiver appointed to marshal ATA's assets in aid of satisfying the judgment. Federal Rule of Civil Procedure 69(a) provides that any such procedure to enforce a judgment "must accord with the procedure of the state where the court is located."  Accordingly, the New York Civil Practice Law and Rules ("CPLR") governs Plaintiff's motion for receivership.

Plaintiff moves for the appointment of a receiver pursuant to section 5228(a) of the CPLR, which authorizes a court to "appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." Whether to appoint a receiver under this section "is a matter of judicial discretion."  United States v. Vulpis, 967 F.2d 734, 736 (2d Cir. 1992); Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 317 (2010).  "Appointments are appropriate 'when, in the judgment of the court, a public auction is inadequate either

14

because it is unlikely to produce significant bids, or because leaving the property in the hands of the judgment debtor creates a risk of fraud or insolvency.'" Ernest Lawrence Group, Inc. v. Gov't Careers Ctr. of Oakland, No. 99 Civ. 3807, 2000 WL 1655234, at *2 (S.D.N.Y. Nov. 3, 2000) (quoting Vulpis, 967 F.2d at 736). Another factor is "the degree to which receivership will increase the likelihood of satisfaction." United States v. Zitron, No. 80 Civ. 6535, 1990 WL 13278, at *1 (S.D.N.Y. Feb. 2, 1990). Finally, receivership is "especially appropriate when the property interest involved is intangible" and "lacks a ready market." Hotel 71, 14 N.Y.3d at 317 (internal quotation marks omitted).

Under the circumstances of this case, the Court finds that exercise of its discretion to appoint a receiver is warranted. First, the Court has provided the Judgment Debtors more than enough time to work toward satisfying the judgment informally and without the Court's intervention. Unfortunately, it is now evident that the Judgment Debtors have no intention of satisfying the judgment on their own. Indeed, despite their acknowledgement that a substantial amount of money would still be owed on the judgment even if they obtained the full relief requested in their motion to amend, the Judgment Debtors made no payment on the judgment in 2012. See generally Zitron, 1990 WL 13278 (appointing receiver because, inter alia, "extensive

negotiations," oral agreements, and repayment schedules "failed to secure a single payment" from defendant since the entry of judgment). Receivership will therefore increase the likelihood of satisfaction given that ATA continues to generate revenue.

Second, the Court has reason to believe that leaving ATA in control of its property risks fraud or insolvency, and recent events only serve to emphasize the Judgment Debtors' efforts at becoming judgment proof. ATA has been dissolved by proclamation for failure to pay taxes, but a new business entity, American Talent Agency, LLC ("ATA LLC"), was formed under the laws of Delaware on February 28, 2012, and authorized to conduct business in New York as a foreign limited liability company on March 12, 2012.[9] While the Court may not have sufficient information at this time to conclude that ATA LLC is a successor company to ATA and was created for the purpose of frustrating creditors' claims—even though the judgment is binding on successors—the Judgment Debtors do not deny that the two entities are connected. That is enough to give the Court pause, especially given the Judgment Debtors' prior representation to the Court that they "have no intent to

---

[9] The Court was made aware of this information in correspondence from counsel, which is being attached to this memorandum and order. The Judgment Debtors object to Plaintiff's supplementing its motion without leave of the Court. Rest assured that if leave had been requested ahead of time it would have been granted, and the Court so grants leave here retroactively.

16

transfer or hide their assets." (Jekielek Aff. Ex. C, letter dated Apr. 8, 2011, at 3.)

Plaintiff has thus raised a reasonable inference of ATA's "precarious financial condition" and an "identifiable risk," see Hotel 71, 14 N.Y.3d at 317-18, that "[l]eaving . . . property in [ATA's] hands would create a danger that [ATA's] assets would be dissipated before plaintiff can recover on its judgment," see Ernest Lawrence Group, 2000 WL 1655234, at *2. Because the Judgment Debtors have consistently dragged their feet on satisfying the judgment and now seem determined to conceal funds that could otherwise be used to reduce the judgment, receivership is an appropriate remedy.

Third, the Judgment Debtors' property interests are just the sort of "intangible" interests that "lack[] a ready market" for which receivership is especially appropriate. Plaintiff characterizes those interests as "ownership of closely-held entities conducting business internationally via contractual rights to payment for performance tours on behalf of performers from which commissions and other payments are due." (See attached letter dated Aug. 8, 2012, at 5.) The Judgment Debtors do not dispute this characterization. Accordingly, as in Hotel 71, receivership here is a particularly relevant means of satisfying the judgment.

17

A final factor that persuades the Court as to the propriety of appointing a receiver in this case is the fact that judgment was entered due to ATA's breach of a settlement agreement that came about in large part due to the Court's active participation.  Settlement is an outcome to be lauded, not flouted.  ATA's breach of the Settlement, less than ten days after the Judgment Debtors agreed to its terms and warranted that ATA was financially capable of complying with its payment obligations, began a disturbing pattern of behavior on ATA's part that evidences a disregard for this Court and the judicial process in general.

The failure of the Judgment Debtors and their counsel to be prepared for a hearing on the issues raised in this memorandum and order, despite signing the joint pre-hearing order, is consistent with ATA's demonstrated ambivalence toward its obligations under the Settlement and the Court's time. Furthermore, ATA's own descriptions of its failure to meet its payment obligations under the Settlement speak volumes about the Judgment Debtors' flippant attitude throughout this litigation. For instance, in correspondence with the Court, counsel for the Judgment Debtors stated that "[w]ith respect to the second payment due to [Plaintiff] by ATA in the amount of $35,000.00 on or before December 31, 2010, Rajkumar again called Sarosh Wagmar and asked for an extension regarding payment and that the

18

payment[] be broken up into <u>manageable</u> amounts." (Jekielek Aff. Ex. C, letter dated Apr. 4, 2011, at 2 (emphasis added).) But what else did the Judgment Debtors warrant the $35,000 lump sum payment to be in the Settlement, if not "manageable"?

Similarly, Rajkumar states in his affidavit that "[a]fter the term of the Settlement . . . commenced, business became slower than anticipated and ATA got behind on its payments." (Rajkumar Aff. ¶ 14.) The Court finds this statement irreconcilable with the Judgment Debtors' representation that ATA was financially capable of meeting its payment obligations under the Settlement; certainly less than ten days' worth of slow business could not have impacted ATA's ability to make the first lump sum payment in full and on time. The inescapable conclusion is that ATA either purposefully misrepresented to Plaintiff and the Court its financial outlook when it entered the Settlement or thereafter sought to shirk its Settlement obligations by pretending to have difficulty in meeting the payment terms. Neither scenario bodes well for the Judgment Debtors.

Simply put, given their track record, the Court has no confidence the Judgment Debtors will satisfy the judgment anytime soon if left to their own devices—indeed, they have provided no reason to think otherwise.

Accordingly, Plaintiff's motion to appoint a receiver is granted as follows:

IT IS HEREBY ORDERED:

(1)   John W. Keefe is appointed receiver,[10] with the usual powers and directions of a receiver, of ATA and any and all revenues payable to ATA from performances booked by or through ATA and the accounts through which such revenues are disbursed;

(2)   The receiver shall have the power to direct disbursements from ATA's revenues to the artists in accordance with their engagements and for expenses that ATA is obligated to pay in connection with the performances booked;

(3)   The receiver is authorized to examine the books and records of ATA and to determine whether ATA has made any improper disbursements or transfers—for example, transfers for inadequate consideration or to defraud creditors—and to take appropriate steps to reclaim or set aside such disbursements or transfers;

(4)   All persons now or hereafter in possession of any assets that ATA owns, possesses, controls, or has any interest in, either directly or through nominees or third parties,

---

[10] Although both sides had the opportunity to present candidates for a receiver, [see Dkt. No. 63], the Judgment Debtors chose not to propose one.  Nor did they object to the qualifications of John W. Keefe.

including without limitation ATA, Rajkumar, and ATA LLC, shall forthwith surrender possession, dominion, or control thereof to the receiver upon demand.

(5)   The receiver is authorized to engage counsel;

(6)   The receiver, prior to entering upon its duties, shall execute and file an oath that it will faithfully and fairly discharge the trust committed to it;

(7)   The receiver shall execute and file with the Clerk of the Court an undertaking, in the amount of $2,500, for the faithful performance of its duties as receiver.

(8)   The receiver shall forthwith deposit all monies received in its own name, as receiver, in any major New York bank account, and shall comply with the documentation and other requirements of CPLR § 6404.  No withdrawal in excess of $1,000 shall be made from the account except as directed by the Court, upon written request of the receiver with simultaneous notice to Plaintiff's counsel and counsel for the Judgment Debtors;

(9)   As commission, the receiver shall be entitled to five percent of the sums he receives and disburses; and

(10) The receiver shall retain all the powers herein granted until such time that the judgment is satisfied in full and Plaintiff files a satisfaction of judgment, which Plaintiff shall do promptly upon satisfaction.

III. CONCLUSION

For the reasons stated above, the Judgment Debtors' motion to vacate the judgment is DENIED, the Judgment Debtors' motion to amend the judgment [Dkt. No. 67] is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion to appoint a receiver is GRANTED.

The Clerk of the Court shall amend the judgment in this case to reflect judgment in Plaintiff's favor as against ATA and Rajkumar, jointly and severally, in the amount of $244,710.39.

John W. Keefe is appointed receiver of ATA in accordance with the directives set forth in this memorandum and order.


SO ORDERED.

Dated:      New York, New York
            January 22, 2013


                                    _____
                                    UNITED STATES DISTRICT JUDGE

22

LAW OFFICES OF

# ANDREW P. SAULITIS P.C.

555 MADISON AVENUE

NEW YORK, NEW YORK 10022

(212) 459-0900

Fax (212) 459-1826

April 7, 2011

**BY FAX**
**212 805-7941**

Hon. Loretta A. Preska
Chief United States District Judge
Daniel Patrick Moynihan
United States Court House
500 Pearl Street-Room 1320
New York, New York 10007-1312

### *Spotnana, Inc. v. American Talent Agency, Inc.*
### **1:09-cv-03698-LAP-GWG**

Dear Judge Preska:

We represent the plaintiff-judgment creditor, Spotnana, Inc. ("Spotnana").

We write pursuant to Item 2 (A) of your Individual Practices responding to the letter dated April 4, 2011 of Jon D. Jekielek, Esq.[1] of Jekielek & Janis LLP on behalf of defendant-judgment debtor American Talent Agency, Inc. ("ATA") and judgment debtor Yugeshwar Rajkumar ("Rajkumar"), against whom judgment was entered on March 28, 2011 on account of failure to comply with the in-court settlement agreement dated November 1, 2010 (copy attached). Mr. Jekielek proposes a motion for relief from the judgment pursuant to Fed. R. Civ. P. 60(b)(3) (for "fraud . . . , misrepresentation, or misconduct by an opposing party") and (6) (for "any other reason that justifies relief"), though no such grounds actually exist.

We also write, pre-motion, regarding an anticipated motion on behalf of Spotnana for appointment of a receiver pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05, as discussed below. *See, e.g., Ernest Lawrence Group, Inc. v. Government Careers Ctr. of Oakland, Cal.*, No. 99 Civ. 3807 (DC), 2000 U.S. Dist. LEXIS 15988 (S.D.N.Y. Nov. 3, 2000) (discussing receivership in aid of enforcement of judgment).[2]

---

[1] Mr. Jekielek and his firm are successors to Meyerowitz Jekielek, PLLC, of which Mr. Jekielek was a partner/member, which represented ATA throughout this action.

[2] We are mindful of your Individual Practices under which "pre-motion" letters are not to exceed three pages. This letter, hence its length, sets forth both Spotnana's position with respect

Hon. Loretta A. Preska
April 7, 2011
Page 2

ATA's proposed motion would be futile, if not frivolous. ATA does not dispute the accuracy of Spotnana's application for judgment. Not only did it fail timely[3] to meet the payment obligations that were due November 10, 2010 ($45,000)[4] (Tr. 2:12-13) and December 31, 2010 ($35,000) (Tr. 2:23-24), as set forth in the application for judgment, but since then, **ATA has not made the payment due April 1, 2011 of $45,000 (Tr. 3:1-2), in any amount, at any time,** which would be an independent, ongoing, default, warranting judgment in any event, something Mr. Jekielek neglects to mention. Nor has ATA honored its guarantee (Tr. 3:9-14).[5]

As the grounds for a Rule 60 motion, Mr. Jekielek refers to a supposed "oral agreement made between the principals to extend the terms of payment" and asserts that therefore "ATA was never in default." Jekielek Ltr. at 3. There was no such agreement nor would it be effective. The settlement agreement provides that "[t]his agreement . . . can't be changed other than by a writing signed by the party to be charged." Tr. 7:22-8:1. New York law, which governs the agreement (Tr. 7:22-23), gives force of law to such requirement. *See* N.Y. Gen. Oblig. Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.") This provision precludes this type of would-be oral agreement. Moreover, Mr. Jekielek does not cite any consideration for any such agreement, so it would not be enforceable in any event.

Lest there be any doubt about the absence of any agreement to extend payment

---

to ATA's anticipated motion and the basis of Spotnana's anticipated motion.

[3]The settlement agreement provides for "[t]ime of the essence in all cases." (Tr. 2:25).

[4]Despite the affirmative representation in the settlement agreement, on the record, that "the defendants represent that they are -- be capable of meeting -- sufficiently solvent, that they will be capable of meeting the obligations under this agreement" (Tr. 7:13-15), ATA failed to make any payment, even the first, when due.

[5]Though it is really surplusage given ATA's other defaults, under the settlement agreement, there is a "guarantee of travel revenue by ATA to Spotnana [of] $300,000 per quarter" and "[t]o the extent of any shortfall, the difference will be guaranteed in cash." (Tr. 3:9-11). ATA's accrued "shortfall" obligations under the quarterly guarantee, due April 1, 2011 but unpaid, are **$27,157.25** (based on ATA having referred only $28,427.50 in travel business to Spotnana over the preceding five months, which is $271,572.50 short of the quarterly guaranteed amount of $300,000). While Mr. Jekielek asserts another, substantially higher amount ($145,625.43), this is simply untrue, nay fabricated. ATA failed to accord Spotnana a first offer and if such travel was booked, it was done with others, in violation of the exclusivity and right of first offer provisions of the settlement agreement (Tr. 3:16-19).

Hon. Loretta A. Preska
April 7, 2011
Page 3

terms, on February 14, 2011, I advised Mr. Jekielek explicitly as follows:

> ATA has been in continuous default since December 31,
> 2010, and remains so. Notice has previously been given.
> There has been no agreement to forbear, though Spotnana has,
> in good faith, held off entering judgment against various
> promises of forthcoming funds, which remain unfulfilled.
> However, Spotnana has been under no obligation to do so,
> and *there has been no extension agreed to.* Accordingly,
> Spotnana reserves its right to enter judgment in accordance
> with the settlement agreement.

Email dated February 14, 2011 (emphasis added).

While Mr. Jekielek asserts that "ATA does not agree that the series of emails sent by Spotnana constitutes notice of default under the settlement agreement," that agreement expressly provides that "notice shall be in all instances given to counsel by fax, overnight mail or e-mail, which shall be considered sufficient notice." Tr. 9:1-3. Copies of multiple notices, given by e-mail to counsel (including Mr. Jekielek[6]) in accordance with the settlement agreement, were submitted with Spotnana's application for judgment, which was also provided to Mr. Jekielek on March 10, 2011, which he did not oppose despite ample time in which to do so. Nor does he deny receipt of any of them.

Payments, made at whim, were outside of any cure period.[7] Furthermore, every partial check that was tendered (always untimely) was indorsed "without prejudice" and accepted accordingly. *See* N.Y. U.C.C. § 1-207 ("A party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved. Such words as 'without prejudice', 'under protest' or the like are sufficient.").

Mr. Jekielek also complains that the judgment as against Rajkumar should require amendment of the caption, *i.e.*, that he be first made a party. Fed. R. Civ. P. 71 provides that "[w]hen an order . . . may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." There is no requirement that the nonparty, here Rajkumar, be made a party defendant for the judgment to be enforceable against him. *See* Fed. R. Civ. P. 54(a); *cf.* Fed. R. Civ. P. 10(a). The form of proposed judgment (including

---

[6]Mr. Jekielek was present when the settlement agreement was made. Tr. 1:18.

[7]We do not concede that the settlement agreement contains a cure right; rather, it contains a three-day notice period for entry of judgment on monetary default (Tr. 8:23-25) and in any event there was no cure within the three days.

Hon. Loretta A. Preska
April 7, 2011
Page 4

against Rajkumar) was provided to Mr. Jekielek, along with the application therefor, on March 10, 2011. He did not object.

Thus Mr. Jekielek's claim to have been "completely shocked" by submission and entry of the judgment, on notice, is belied not only by multiple notices that this would happen, but by the pattern of defaults that preceded it, of which he was well aware. If he ignored the notices, he did so at his peril.

In short, Mr. Jekielek's letter and proposed motion are little more than an attempt to re-trade on a settlement agreement under which ATA decided it would make payments whenever and in whatever amounts it saw fit, rather than in the manner required by the agreement, and despite the clearly-stated consequences of non-compliance. Meantime, while leaving obligations unpaid, Rajkumar took off with his wife on a vacation to Las Vegas.[8] The consequences are very predictable under the settlement agreement, and there is no basis for any relief from a judgment that simply reflects those consequences.

On its part, Spotnana proposes to move for appointment of a receiver of ATA and Rajkumar, pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a), 6402, 6403, 6404 and 6405. *See, e.g., Ernest Lawrence Group, Inc. v. Government Careers Ctr. of Oakland, Cal.,* No. 99 Civ. 3807 (DC), 2000 U.S. Dist. LEXIS 15988 (S.D.N.Y. Nov. 3, 2000).

It is apparent that ATA is trifling with its obligations. Last week, Rajkumar stated to Spotnana's principal, Sarosh Waghmar, that ATA would "protect its assets" and make it difficult to enforce any judgment if Spotnana did not capitulate to a revised settlement agreement. Rajkumar is the sole shareholder and the "CEO" of ATA (Tr. 6:13-19). He arrogates unto himself who and what gets paid. He represented ATA's solvency and capability of meeting the obligations under the settlement agreement (Tr. 7:13-15) and not even once did he effect payment in accordance with the settlement agreement, committing resources elsewhere.

On March 1, 2011, in view of ATA's continuing default, despite repeated notices, I made a demand for assurances from ATA, as follows:

---

[8]We know this because Rajkumar booked the flights through Spotnana, for $1,601.40. Rajkumar is also a publicly-known gambler (*see* http://news.pokerpages.com/gallery2/v/ tournaments/2009events/borgatawinterpokeropen/mainevent/day3/mateorajkumarbor3.jpg.htm; http://pokerdb.thehendonmob.com/player.php?a=r&n=119702, http://www.cardplayer.com/poker -players/98602-yugeshwar-rajkumar; http://www.bluffmagazine.net/players/yugeshwar-rajkumar/ 55644/player-profile.asp; http://www.worldpokerrank.com/players.php?id=92011&game=2).

Hon. Loretta A. Preska
April 7, 2011
Page 5

> Given that ATA has not timely met any of its obligations
> under the stipulation of settlement, and remains in default
> thereunder, Spotnana has reasonable grounds for insecurity of
> future performance, and demands assurances of due
> performance thereof within a reasonable time and any in any
> event within five business days from this date. *This is without
> waiver of any present or past defaults, nor is this an
> agreement to forbear in the exercise of any right, including
> the right to enter judgment.*

Email dated March 1, 2011 (emphasis added). ATA provided no assurances whatsoever. Rather, ATA's president, Raymond "Twin" Grant, informed Spotnana's principal Sarosh Waghmar that ATA would *not* be paying the $45,000 due April 1, 2011, which remains the case.

Inasmuch as Spotnana is a secured creditor of both ATA and Rajkumar (Tr. 9:15-20), on March 1, 2011, Spotnana demanded, pursuant to N.Y. U.C.C. § 9-609(c), that they assemble collateral:

> In view of the pending default, demand is also made that both
> ATA and Mr. Rajkumar assemble all collateral securing their
> obligations and make it available to Spotnana at the offices of
> the undersigned. This includes, without limitation, all stock
> interest in ATA and financial assets including accounts
> receivable and all accounts. This demand is made pursuant to
> UCC 9-609(c) without waiver or limitation to any other
> remedies.

Email dated March 1, 2011. Neither ATA nor Rajkumar complied, ignoring this demand.

Refusal to assemble collateral as required bespeaks intent to keep collateral away from Spotnana and to thwart collection. Spotnana is a small travel company that is owed a substantial amount of money. It is not a finance company for ATA, which today holds itself out as "urban music's largest independent international booking agency" (http://americantalentagency.net/agents.php?agent=Mateo%20Rajkumar). Given the pattern of failure to meet obligations and delay, the judgment will be ineffective and the subject of a cat-and-mouse game, which can be mitigated via receivership, under which ATA and Rajkumar can continue doing business. Also, a receiver would be in a position to examine and seek recovery of "asset protection" transfers made by ATA while insolvent, under applicable fraudulent conveyancing statutes, as well as for breach of fiduciary duties that are owed to creditors when a corporate debtor is insolvent, if that be the case.

Hon. Loretta A. Preska
April 7, 2011
Page 6

In sum, ATA's proposed motion is highly inadvisable, indeed baseless. At the same time, appointment of a post-judgment receiver should be the appropriate course under the circumstances.

Respectfully yours,

Andrew P. Saulitis

APS/wp
encl. (transcript)

c:    Jon D. Jekielek, Esq.
      Jekielek & Janis LLP
      fax 212-542-8883

Apr 15 2011 4:05PM    Andrew P. Saulitis P.C.    1 212 459-1826    p.1

LAW OFFICES OF

# ANDREW P. SAULITIS P.C.

555 MADISON AVENUE

NEW YORK, NEW YORK 10022

---

(212) 459-0900

Fax (212) 459-1826

April 15, 2011

**BY FAX**
**212 805-7941**

Hon. Loretta A. Preska
Chief United States District Judge
Daniel Patrick Moynihan
United States Court House
500 Pearl Street-Room 1320
New York, New York 10007-1312

### *Spotnana, Inc. v. American Talent Agency, Inc.*
### 1:09-cv-03698-LAP-GWG

Dear Judge Preska:

We represent the plaintiff-judgment creditor, Spotnana, Inc. ("Spotnana").

We write in reply to the "pre-motion" response letter dated April 8, 2011 of Jon D. Jekielek, Esq. of Jekielek & Janis LLP on behalf of defendant-judgment debtor American Talent Agency, Inc. ("ATA") and judgment debtor Yugeshwar Rajkumar regarding Spotnana's motion for appointment of a receiver pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05.

In the conference with the Court held April 11, 2011 the parties confirmed that their respective "pre-motion" letters would be treated as the motion papers, plus any additional authorities submitted by April 15, 2011, as confirmed by the parties' jointly-signed letter dated April 11, 2011.

We address briefly the judgment debtors' assertions that appointment of a receiver should bear a heightened (clear and convincing) standard and should be used only in "extreme" cases. That is not the applicable standard. Judgment debtors cite and rely primarily on *Republic of Philippines v. Marcos*, 653 F. Supp. 494 (S.D.N.Y. 1987). That case, and all cases upon which it relies, involved *pendente lite* receiverships, as opposed to post-judgment. *See also SEC v. Republic Nat'l Life Ins. Co.*, 378 F. Supp. 430 (S.D.N.Y. 1974); *Wickes v. Belgian Am. Educational Found., Inc.*, 266 F. Supp. 38 (S.D.N.Y. 1967); *Meineke Discount Muffler Shops, Inc. v. Noto*, 603 F. Supp. 443

Hon. Loretta A. Preska
April 15, 2011
Page 2

(E.D.N.Y. 1985) (all involving *pendente lite* applications).[1]

There is no such requirement in the context of post-judgment supplementary proceedings under the statute, N.Y. Civ. Prac. L. & R. Art. 52 and § 5228, nor under any case applying it. *E.g., Oppel v. Di Gangi*, 84 A.D.2d 549, 443 N.Y.S.2d 177 (2d Dep't 1981). It is "entirely a matter of discretion." *Drucker v. Drucker*, 53 Misc.2d 446, 447, 278 N.Y.S.2d 645 (Sup. Ct. Queens County 1967); 11 Weinstein-Korn-Miller, *New York Civil Practice* ¶ 5228.04; *Ernest Lawrence Group, Inc. v. Government Careers Ctr. of Oakland, Cal.*, No. 99 Civ. 3807 (DC), 2000 U.S. Dist. LEXIS 15988 (S.D.N.Y. Nov. 3, 2000).

> [I]n determining whether the appointment of a receiver constitutes a provident exercise of discretion, "courts have considered the 'alternative remedies available to the creditor * * *; [and] (2) the degree to which receivership will increase the likelihood of satisfaction* * *'." *Chlopecki v. Chlopecki*, [296 A.D.2d 640, 641 (3rd Dept. 2001)], quoting from, *United States v Zitron*, 1990 U.S. Dist. LEXIS 1049, 1990 WL 13278 (SDNY).

*Harbor Footwear Group, Ltd. v. ASA Trading, Inc.*, 1 Misc. 3d 911A, 781 N.Y.S.2d 624, 2004 N.Y. Misc. LEXIS 57; 2004 NY Slip Op 50036U, *2-3 (Sup. Ct. Nassau County Jan. 20, 2004) (Austin, J.).[2]

Here, virtually all of the judgment debtors' business revenue emanates from overseas, from various promoters operating in foreign venues, where neither garnishment

---

[1]*Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252 (2d Cir. 1963), decided nearly a half-century ago, involved Connecticut supplementary procedures applicable via Fed. R. Civ. P. 69, and there, garnishment and attachment of debts were available, which is not the case here (see below).

[2]Unlike pre-judgment remedies, which are to applied sparingly, supplementary proceedings are an adjunct to the Court's inherent and broad power to enforce its own judgments. *Cf. Knox v. Orascom Telecom Holding S.A.E.*, 477 F. Supp. 2d 642, 645 (S.D.N.Y. 2007) ("Absent jurisdiction to enforce its own judgments, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.' . . . Thus, the Supreme Court has 'approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments . . . .'") (quoting *Peacock v. Thomas*, 516 U.S. 349, 356, 116 S. Ct. 862, 133 L. Ed. 2d 817 (1996) (quoting *Riggs v. Johnson County*, 73 U.S. 166, 18 L. Ed. 768 (1868))).

Hon. Loretta A. Preska
April 15, 2011
Page 3

nor attachment nor any other supplementary process is available. There is no international convention for the enforcement of judgments abroad, and the "comity" process is famously desultory. Furthermore, ATA handles money in an agency capacity for artists, from which it exacts commissions and expenses. Conventional restraints and levies would be complicated by attaching to funds held in trust, and would be deleterious to the business relationships involved. Thus a receiver would increase the likelihood of satisfaction of the judgment under the circumstances here, and would assist in balancing competing interests.

In this case, the property to be received consists of the revenues payable to ATA from performances booked by or through ATA and the accounts through which such revenues are disbursed. The receiver should have the power to direct the disbursement from those revenues to the artists in accordance with their engagements and for expenses that ATA is obligated to pay in connection with the performances booked. The receiver should also have the power to examine the books and records of ATA to determine any disbursements to or for the benefit of "insiders" of ATA, any transfers for inadequate consideration and any transfers to hinder, delay or defraud creditors and to take appropriate steps to reclaim or set aside such transfers. The receiver should have the authority to engage counsel and accountants.

Accordingly a receiver should be appointed pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05 with respect to the property and with the powers set forth in the preceding paragraph, together with such other and further relief as the Court deems just.

Respectfully yours,

Andrew P. Saulitis

APS/wp

c:   Jon D. Jekielek, Esq.
     Jekielek & Janis LLP
     fax 212-542-8883

LAW OFFICES OF

ANDREW P. SAULITIS P.C.

555 MADISON AVENUE

NEW YORK, NEW YORK 10022

(212) 459-0900

Fax (212) 459-1826

August 8, 2012

**BY FAX**
**212 805-7941**

Hon. Loretta A. Preska
Chief United States District Judge
Daniel Patrick Moynihan
United States Court House
500 Pearl Street-Room 1320
New York, New York 10007-1312

*Spotnana, Inc. v. American Talent Agency, Inc.*
**1:09-cv-03698-LAP-GWG**

Dear Judge Preska:

We represent the plaintiff-judgment creditor, Spotnana, Inc. ("Spotnana").

We write in further support of Spotnana's pending motion for appointment of a receiver pursuant to Fed. R. Civ. P. 69(a) and N.Y. Civ. Prac. L. & R. §§ 5228(a) and 6402-05, of defendant-judgment debtor American Talent Agency, Inc. ("ATA") and its (sole) shareholder and "CEO," judgment debtor Yugeshwar Rajkumar ("Rajkumar").[1] The business assets of Rajkumar include ATA, American Talent Agency, LLC, which appears to be a recently-formed successor to ATA, and Mateo Productions, Inc. Spotnana also has a perfected security interest in all such assets, so it has priority over any other creditors.

ATA and Rajkumar have not paid one cent toward the judgment in nearly a year, and various purported payments have resulted in bounced checks, as ATA has managed to keep its bank balances very low or negative despite the millions in funds that pass through its hands in its business and most recently, has closed accounts in favor of conducting business, albeit the same business, via the a new entity controlled by Rajkumar.

---

[1]Receivership is applicable to individuals as well as corporate entities, especially when the individual's personal and business assets are interrelated, as they are here, with Yugeshwar being the sole shareholder of ATA, who is entirely in charge of its (mis)management.See, E.g.,

Hon. Loretta A. Preska
August 8, 2012
Page 2

Based on the books and records of ATA that we have received via subpoena, albeit limited,[2] it is evident that ATA has, for the past year or more, engaged in gross financial improprieties, siphoning millions of dollars in "uncategorized expenses," with Rajkumar having drawn off hundreds of thousands of dollars to himself as "Member Draw," withdrawing thousands in cash through ATMs ($6,018.50 in 2010 and $11,610.83 in 2011) and stripping ATA of huge amounts of cash in obvious efforts to render it "judgment proof" against Spotnana. ATA (and apparently Rajkumar) have not filed tax returns since 2006. ATA has not accounted for *any* revenue in 2012, after posting "gross profits," in cash, of $10,151,472.15 and $9,002,722.85 for 2010 and 2011 respectively, now all gone. They have no intention of paying the judgment; their intent is to avoid doing so.

Furthermore, ATA has been dissolved by proclamation for non-payment of New York franchise taxes. *See* http://appext9.dos.ny.gov/corp_public/CORPSEARCH. ENTITYINFORMATION?p_nameid=2618722&p_corpid=2586345&p_entity_name=am erican%20talent%20agency. Yet ATA continues to hold itself out as itself out publicly as "urban music's largest independent international booking agency" (http://american talentagency.net/agents.php?agent=Mateo%20Rajkumar), and has booked artists at performance venues around the world, including, last April, at "Supafest" held in four cities in Australia, billed as "Australia's Largest Urban Music Festival."[3] ATA acts as agent for performers and enters into booking agreements with international venues on the performers' behalf, for substantial fees from which ATA exacts commissions, at least 10% plus "travel allowances." Yet ATA shows not one cent of revenue from this on its

---

[2]ATA and Rajkumar are in contempt of a post-judgment subpoena as to significant documents.

[3]On its website, ATA described "Supafest" thusly:

> The Worlds Largest Urban Festival featuring a stellar line-up of some of the best and most popular acts in the world today. In its inaugural first year, Supafest alone drew over 65,000 people who were entertained by superstars Akon, Kelly Rowland, Pitbull, Jay Sean, Sean Paul & Eve. Supafest 2012 will feature Megastar artists P. Diddy, Kelly Rowland, Ice Cube, Lupe Fiasco, Rick Ross, Trey Songz and many others to be announced with over 8 hours of live performances. With crowds of over 100,000 expected to attend, Supafest is quickly gaining a reputation as the worlds largest Urban Music Festival. With shows in Brisbane, Sydney, Melbourne and Perth, Supafest 2012 promises to Deliver some of the most exciting and leading performers in the Urban Music world today!! TOUR DATES are April 14th -April 22nd

http://americantalentagency.net/news.php?article=38435.

Hon. Loretta A. Preska
August 8, 2012
Page 3

books for 2012.

ATA's disappearing act has gone even further. It appears that the assets and business of ATA have been transferred surreptitiously to another, recently-formed, entity, American Talent Agency, *LLC*, a Delaware limited liability company formed on February 28, 2012 (https://delecorp.delaware.gov/tin/controller) and authorized in New York on March 12, 2012 (http://appext9.dos.ny.gov/corp_public/CORPSEARCH. ENTITY_INFORMATION?p_nameid=4212760&p_corpid=4215022&p_entity_name=a merican%20talent%20agency). This is to no avail, as under the parties' settlement agreement, "in the event that there is any sale of substantially all assets of ATA in the future, any sale must require as a condition of sale of assets an assumption by the buyer of all liabilities under this agreement." Settlement Agreement at 6. Therefore, the new entity is required to assume ATA's liabilities, including the judgment. Rajkumar is the sole shareholder of ATA so he is the person who orchestrated this transfer obviously in an attempt to render ATA impervious to the judgment.

Under such circumstances, a receiver is warranted, indeed necessary. The New York Court of Appeals recently explicated the contours of a receivership as a means to effect satisfaction of a judgment where the judgment debtor's assets are intangible and do not lend themselves to auction:

> "Upon motion of a judgment creditor . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment" (CPLR 5228 [a]; *see Matter of Chlopecki v Chlopecki*, 296 AD2d 640, 641 [3d Dept 2002]). The appointment of a receiver pursuant to section 5228 (a) is a matter within the court's discretion (*see Drucker v Drucker*, 53 Misc 2d 446, 448 [Sup Ct, Special Term, Queens County 1967]). A motion to appoint a receiver should only be "granted . . . when a special reason appears to justify one" (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5228:1, at 324). In deciding whether the appointment of receiver is justified, courts have considered the "(1) alternative rem-edies available to the creditor . . . ; (2) the degree to which receivership will increase the likelihood of satisfaction . . . ; and (3) the risk of fraud or insolvency if a receiver is not appointed" (*United States v Zitron*, 1990 WL 13278, *1, 1990 US Dist LEXIS 1049, *2 [SD NY, Feb. 2, 1990] [citations omitted]). "A receivership has been held especially

Hon. Loretta A. Preska
August 8, 2012
Page 4

> appropriate when the property interest involved is intangible,
> lacks a ready market, and presents nothing that a sheriff can
> work with at an auction, such as the interest of a
> psychiatrist/judgment debtor in a professional corporation of
> which he is a member" (Siegel, NY Prac § 512, at 872 [4th
> ed]; *see Udel v Udel*, 82 Misc 2d 882 [NY City Civ Ct 1975]).

*Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 317, 926 N.E.2d 1202, 900 N.Y.S.2d 698 (2010).

The Court of Appeals further noted, that "given the lack of marketability of defendants' intangible property interests (there is no ready market for them), turning the property over to the sheriff would not be helpful in trying to satisfy the judgment. A receiver has the authority to marshal and, if necessary, liquidate defendants' interests." *Id.*, 14 N.Y.3d at 318.

This court has noted that

> [p]erhaps the strongest factor militating toward receivership is
> the corporations' uncertain economic future. As eminent
> commentators have recently noted, "[t]he need for a
> receivership is obvious when … leaving the property in the
> custody of the judgment debtor creates a risk of fraud or
> insolvency." Weinstein, *et al. supra*, 5228.04 at 52-466
> (emphasis added) (footnote omitted). *See also, Melluzzo v.*
> *Melluzzo*, 62 A.D.2d 1061, 404 N.Y.S.2d 147 (2d Dept.1978)
> (receivership held appropriate based on showing of risk of
> insolvency and substantial possibility of fraud against
> creditors by debtor).

*United States v. Zitron*, No. 80 Civ. 6535 (RLC), 1990 WL 13278, *1-2 (S.D.N.Y. Feb. 2, 1990).

In *Zitron*, "extensive negotiations, subpoenas, oral agreements, and repayment schedules had failed to secure a single payment" from the defendant after a judgment had been entered. *Id.*, 1990 US Dist LEXIS 1049 at *3-4. The defendant offered no explanation for his failure to pay, and defendant's corporations faced an uncertain financial future. *Id.* at *4-5. The court consequently found that "no remedy short of receivership" would be effective in enforcing the government's judgment. *Id.* at *4.

A receivership has been held especially appropriate where, as here, the property

Hon. Loretta A. Preska
August 8, 2012
Page 5

interest involved is intangible, lacks a ready market, and presents nothing that a sheriff can work with at an auction. *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d at 318. In light of the complexity of defendants' intangible ownership interests in various entities, defendants' disregard for discovery orders regarding their finances, the danger of insolvency if a receiver were not appointed, and the lack of marketability of the intangible property interests, the appointment of a receiver was warranted.

ATA's and Rajkumar's property interests are not marketable in any meaningful sense. Their interests consist of ownership of closely-held entities conducting business internationally via contractual rights to payment for performance tours on behalf of performers from which commissions and other payments are due. These are property rights that are appropriate for garnishment. Under N.Y. Civ. Prac. L. & R. § 5201 (b), "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested." Subdivision (b) "authorizes a judgment creditor to reach for any property interest the judgment debtor may have, whether [real or personal,] tangible or intangible, 'which could be assigned or transferred'." David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:9, at 67. However, most if not all of these interests involve overseas venues and itinerant performers. It is not possible to "garnish" these assets as the would-be garnishees are outside of the United States and otherwise not subject to restraint or levy by a marshal. It is also very easy for ATA and Rajkumar to park assets outside of the United States or to direct them out of reach of normal supplementary process, as they have apparently done here. By ordering surrender of assets to a receiver, assets can be repatriated and liquidated. Specifically, in appointment of a receiver, Rajkumar and ATA can and should be directed to surrender possession, dominion or control of all any and all assets to the receiver upon demand. *E.g., Ernest Lawrence Group v. Government Careers Ctr. of Oakland*, No. 99 Civ. 3807 (DC), 2000 U.S. Dist. LEXIS 15988, *8 (S.D.N.Y. Nov. 2, 2000) (appointing receiver and ordering surrender of assets).

. In sum, a receivership is acutely necessary here, and should be appointed.

Respectfully yours,

Andrew P. Saulitis

Andrew P. Saulitis

APS/wp

c:     Jon D. Jekielek, Esq.
       Jekielek & Janis LLP
       fax  212-542-8883

# JEKIELEK & JANIS LLP

### ATTORNEYS AND COUNSELORS AT LAW
www.jj-lawyers.com

**New York City Office**
295 Madison Avenue, 22nd Floor, New York, NY 10017
Phone: 212-686-7008 • Fax: 212-542-8883

**Philadelphia Area Office**
406 E. Pennsylvania Boulevard, Feasterville, PA 19053
Phone: 215-396-2727 • Fax: 267-386-2167

Jon D. Jekielek (jon@jj-lawyers.com)
*Admitted in New York*
**Reply to New York City Office**

<u>VIA FACSIMILE</u>

August 13, 2012

The Hon. Loretta A. Preska
Chief United States District Judge
United States Court House
500 Pearl Street – Room 1320
New York, New York 10007

> Re:   <u>Spotnana v. American Talent Agency, et al: 09.Civ. 3698 (LAP)(GWG)</u>

Dear Judge Preska:

I represent defendant America Talent Agency, Inc. ("ATA" or "Defendant") and Yugeshwar Rajkumar ("Rajkumar", or collectively referred to herein as "Defendants") in the above-referenced action and write pursuant to Your Honor's individual rules and practices and (1) in response to a letter sent to the Court by Andrew Saulitus, Esq., the attorney for Spotnana, Inc. (the "Plaintiff" or "Spotnana" ) on August 8, 2012 which requests that a Receiver be appointed over the Defendants business and (2) to seek relief pursuant to Rule 62(b)(3) of the Fed. R. Civ. P. by requesting an immediate stay in the enforcement of the Judgment entered against Defendants jointly and severally in the amount of $366,163.11 in favor of Spotnana, Inc. ("Spotnana" or "Plaintiff") (the "Judgment").

1. Spotnana's August 8th request that a receiver be appointed to manage the business of ATA is untimely and should be denied for the reasons previously set forth in Plaintiff's letter of April 8, 2011.

The Plaintiff's August 8, 2012 letter requests that a receiver be appointed with respect to the Defendants and in making this request relies on information provided in response to a subpoena. First and foremost, this submission is untimely and ink violation of the Court's previous order, which provided that the parties hereto submit any law and or facts via letter motion to the Court for its consideration by April 12th of 2011. If the Court recalls, the parties agreed to treat a series of letters drafted by each party in April 2011 as a formal motion for a receiver. That motion was fully briefed and submitted by mid April 2011. The Court had even provided the parties with a final date by which to submit any additional facts or law in support of its motion. The date escapes me at the moment, but it has long since past, and Mr. Saulitus took advantage of this extended time frame to submit additional law in support of Plaintiff's motion for a receiver against the Defendants. To date the motion has not been decided, but nevertheless, the fact that the

JEKIELEK & JANIS LLP

Hon. Loretta A. Preska
August 13, 2012
Page 2 of 4

motion has not been ruled on does not give Mr. Saulitus the right to submit was is essentially a reply without leave of the Court to do so.

While the Defendants stand by their position that the Court should not consider the contents of the Plaintiff's August 8, 2012 letter, because surely the letter has been read by Your Honor, some of the contents must be clarified.

ATA INC has in fact been dissolved by proclamation by the State of New York, and as it stands is in the process of resolving any outstanding tax issues with the State and Federal government. In furtherance of that my client's accountant provided me with very rough profit and loss statements from ATA INC since 2008. These numbers had not been verified by Mr. Rajkumar or any ATA INC representative and they had not been filed with the IRS. I sent them to Mr. Saulitus in good faith and in response to a subpoena he issued. I also sent them to Mr. Saulitus with the explanation that all of the information provided in those profit and loss statements and balance sheets had not been confirmed by the Defendants and were subject to their review and the numbers had to confirmed and revised prior to submitting to the IRS. Enclosed is the correspondence to Mr. Saulitus which addressed these issues.

Therefore, the representations made to the Court about the Defendants "siphoning off millions of dollars" are patently false, unsubstantiated and are made solely in reliance on rough drafts of accountings put together by third parties.

Additionally, Mr. Saulitus could have looked into the veracity of these numbers should he have chosen to proceed with the deposition of Mr. Rajkumar, which was confirmed and scheduled for July 26, 2012. For reasons unknown to me, Mr. Saulitus never informed me he was cancelling the deposition, rather after reaching out numerous times I never heard back from him. Mr. Saulitus has not made any efforts to reschedule the disposition of Mr. Rajkumar.

Therefore, the Court should not consider the Plaintiff's August 8, 2012 letter submitted by the Plaintiffs in support of its previously fully briefed motion for an appointment of a receivership. Furthermore, the Defendants respectfully refer the Court to the law and facts set forth in their April 8, 2012 letter, which is enclosed herein for Your Honor's review.

2. Spotnana's request for a Receiver as to American Talent Agency, LLC ("ATA LLC") should be denied as ATA LLC is not a judgment creditor of Spotnana

In its August 8, 2012 letter to the Court, Spotnana also requests that Your Honor appoint a receiver to ATA LLC, a limited liability company formed under the laws of the State of Delaware and authorized to do business in the State of New York. This request should denied outright or in the alternative, the Plaintiff should be required to make its own motion to amend the Judgment to include ATA LLC as judgment creditor of the Plaintiff. A simple assertion that the judgment is binding as to Mr. Rajkumar and ATA

# JEKIELEK & JANIS LLP

Hon. Loretta A. Preska
August 13, 2012
Page 3 of 4

INC. While Mr. Saulitus has made allegations that ATA LLC is the successor company of ATA INC as a result of ATA INC's transfer of assets to ATA LLC, this allegation is unfounded and made in conjecture.

The Plaintiff's letter has failed to substantiate its claim that ATA LLC is a successor company to ATA INC by, including but not limited to, its failure to formally address the factors considered by New York courts when making such determination by failing to file a motion seeking such relief which includes the submission of an affidavit from an individual with personal knowledge of the facts and circumstances surrounding the business operations of ATA LLC and/or the deposition testimony from Mr. Rajkumar himself (which was obtainable and which the Plaintiff elected not to take on July 26, 2012).

While the Plaintiff has loosely made the allegation that ATA LLC is a successor company, the General Rule is that a Court shall make its determination as to whether or not a company is in fact a successor company when considering various factors. In the absence of a statute, a successor company ordinarily is not liable for the debts of a predecessor or selling company unless: 1. There was an agreement to assume such debts; 2. The circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations; 3. The successor company was a mere continuation of the predecessor; or 4. The transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims. *Miller v. Forge Mench Partnership, Ltd.,* 2005 WL 267551 (United States District Court, S.D.N.Y)

Mr. Saulitus had the opportunity to depose Mr. Rajkumar and get information regarding the operating and ownership of ATA LLC on July 26th, it was his choice not to proceed with the deposition as he continues to choose not to reschedule the deposition. Therefore, until Plaintiff has (1) made a formal motion to amend the judgment to add ATA LLC to the caption and become a judgment creditor of Spotnana and (2) through that motion, substantiated that ATA LLC is indeed a successor company of ATA INC, by addressing the factors as provided for above, the Court should not grant Plaintiff's request to treat ATA LLC as a successor company nor should the Court appoint a receiver to run the business operations of ATA LLC.

3. Enforcement of the Judgment should be stayed until the Court has ruled on the Defendants Motion to Amend the Judgment made on May 25, 2012

On or about March 28, 2011, the Judgment was entered against the Defendants and shortly thereafter, on or about April 4, 2011 and April 8, 2011, letters were sent to the Court requesting, among other things, a stay in enforcement of the Judgment. Subsequently, the parties reached an agreement concerning the balance owed to the Plaintiff and operated underneath that agreement for quite some time. However at the top of 2012, a dispute between the parties arose with respect to the amount owed under the judgment and as to the application of the business don between the parties to the outstanding balance.

AUG/13/2012/MON 03:54 PM    The Roth Law Firm          FAX No. 212 542 8883              P. 005

# JEKIELEK & JANIS LLP

Hon. Loretta A. Preska
August 13, 2012
Page 4 of 4

Per the Court's Order, on or about May 25, 2012, Defendants filed a Motion to Amend, Alter, and/or Seek Relief form the Judgment pursuant to Rule 59 of the Fed. R. Civ. P. (the "Motion"), which has been fully briefed and submitted. To date, no ruling has been made denying or granting the Motion in full or in part.

As it stands today, there is no stay on the enforcement of the Judgment and recently, Plaintiff has engaged in acts attempting to enforce the Judgment, including but not limited to sending restraining notices to several banks and scheduling the deposition of Rajkumar for this Wednesday, July 25, 2012.

As the Court is undoubtedly aware, when a restraining notice is served upon a bank where the judgment creditor maintains an account, the bank will hold an amount equal to twice the amount of the judgment, in this case a bank account maintained by the Defendants could be debited and restrained in the amount exceeding $650,000.00. Such restraint will negatively impact and damage the Defendant's business , by preventing the defendants from paying overhead expenses, employee wages, taxes and may in some instances restrain money that is dedicae3d to the payment of the Defendants clients or artists, thus damaging Defendant s further.

While the Defendants do not dispute that some money is owed to Plaintiff under the Judgment, that amount, as argued in their Motion to Amend, is closer to $100,000.00. Therefore, the restraint of their bank accounts in an amount over six times that is extremely inequitable and prejudicial to the Defendants. Aside from the restraining of the bank account, the seizure of real property or other assets in an amount of the current judgment could lead to a forfeiture of assets and payments made to Plaintiff that are well in excess of the amount Defendants have submitted that is actually owed.

Therefore, a request is respectfully made to the Court that the enforcement of the Judgment be stayed immediately, until the outcome of the Rule 59 Motion is decided. However, should the court grant the stay of enforcement, the Defendants would nevertheless appear for their respective depositions should counsel for the Plaintiff desire to conduct them during the pendency of the Motion to Amend. The Defendants respectfully request that this letter be treated as a motion for the relief requested herein with respect to their request to stay enforcement of the Judgment, however, in the alternative, per the Court's direction the Defendants will file a formal motion.

Respectfully submitted,

Jon D. Jekielek

Enclosures
cc:    Andrew Saulitus, Esq. (via electronic mail and facsimile)
       *Attorney for the Plaintiff*